UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOSEPH FERRARA, SCOTT JOHNSON,
and MICHAEL TRINCA, individually and
on behalf of all other persons similarly
situated,

        Plaintiffs,

        v.                      5:24-CV-337 (DNH/ML)

UNITED AUTO SUPPLY OF
SYRACUSE, INC., and PINNACLE
EMPLOYEE SERVICES, LLC,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:               OF COUNSEL:

GATTUSO & CIOTOLI, PLLC       FRANK S. GATTUSO, ESQ.
Attorneys for Plaintiffs
The White House
7030 East Genesee Street
Fayetteville, NY 13066

VIRGINIA & AMBINDER LLP       ALANNA ROSE SAKOVITS, ESQ.
Attorneys for Plaintiffs            JAMES E. MURPHY, ESQ.
40 Broad Street, Suite 7th Floor    JENNY S. BREJT, ESQ.
New York, NY 10004

BOND SCHOENECK & KING, PLLC  HANNAH K. REDMOND, ESQ.
Attorneys for Defendants          SABRINA SALAMA, ESQ.
One Lincoln Center              SUZANNE K. MESSER, ESQ.
Syracuse, NY 13202

DAVID N. HURD
United States District Judge

## DECISION and ORDER

## I.    INTRODUCTION

On March 8, 2024, named plaintiffs Joseph Ferrara ("Ferrara"), Scott Johnson ("Johnson"), and Michael Trinca ("Trinca") (collectively "named plaintiffs"), former drivers and warehouse workers, filed this putative class and collective action against defendant United Auto Supply of Syracuse, Inc. ("United"), an automotive parts business, alleging violations of the Fair Labor Standards Act and related state law.  Dkt. No. 1.

After United answered the initial complaint, Dkt. No. 9, and an attempt at mediation failed, Dkt. No. 21, named plaintiffs filed a First Amended Complaint that, among other things, added as a named defendant Pinnacle Employee Services, LLC ("Pinnacle"), United's payroll services provider.  Dkt. No. 29.  Thereafter, United and Pinnacle (collectively "defendants") answered the operative pleading.  Dkt. Nos. 33, 36.

On December 16, 2025, named plaintiffs moved to certify a class and collective action of drivers and warehouse workers employed by defendants based on defendants' allegedly uniform policy and practice of forcing thirty-minute deductions for meal breaks that plaintiffs were regularly required to cut off or

work through in order to complete their job duties, resulting in "chronic under-payment of wages and overtime compensation." Dkt. No. 51-40.

The motion has been fully briefed, Dkt. Nos. 63, 77, and will be considered on the basis of the submissions without oral argument.

## II.    BACKGROUND

United is an automotive parts wholesaler and distributor headquartered in Syracuse, New York. Dkt. No. 63 at 7.[1] United outsources certain relevant human resources functions to Pinnacle. *Id.* United operates twenty-six retail locations throughout New York and a warehouse facility in Syracuse. *Id.* at 7–8. Ferrara and Johnson worked at United's Auburn location. Dkt. No. 51-40 at 13–14 (citing supporting declarations). Trinca worked at United's warehouse facility at Farrell Road in Syracuse. *Id.*

Ferrara lives in Cayuga County, New York. Dkt. No. 29 ¶ 9. He was employed by defendants as a part-time Driver from about May 2021 to December 20, 2023. *Id.* Johnson also lives in Cayuga County. *Id.* ¶ 10. He was jointly employed by defendants as a full-time Driver, and then as a Warehouse Associate, from 2022 through 2023. *Id.* Trinca lives in Onondaga County. *Id.* ¶ 11. He was jointly employed by defendants as a full-time Warehouse

---

[1] Pagination corresponds with ECF headers.

3

Supervisor, and then as a Warehouse Manager, from November 20, 2021, to January 10, 2024. *Id.*

Plaintiffs' First Amended Complaint alleges that named plaintiffs and similarly situated workers employed by United (and/or jointly employed by Pinnacle) were paid hourly wages that had thirty-minute meal breaks deducted from their paychecks even though they were regularly unable to actually take those breaks due to their workload. *See, e.g.*, Dkt. No. 29 ¶¶ 42–48, 50–51; Dkt. No. 51-40 at 12–13 (collecting supporting declarations).

As plaintiffs explain, this improper meal-break deduction for United employees who worked at least six hours per day was allegedly achieved through various means: automatic thirty-minute payroll deductions, policies requiring employees to clock in and out for their breaks even when they were unable to take them, and policies precluding employees from clocking back in prior to thirty minutes later once they had clocked out for a break. *See* Dkt. No. 51-40 at 16–17; *see also* Dkt. No. 77-8 at 14–15.

The First Amended Complaint alleges that multiple hourly employees verbally complained about these policies. Dkt. No. 29 ¶ 49. According to plaintiffs, these notifications resulted in threats of retaliation, including but not limited to threats of termination. Dkt. No. 51-40 at 12–13. According to the First Amended Complaint, these unpaid periods caused named plaintiffs and other similarly situated drivers and warehouse workers to perform work for

4

defendants without receiving pay for all hours worked, including overtime compensation, in violation of the FLSA and related state law. *See, e.g.*, Dkt. No. 29 ¶ 55–56.

## III.  LEGAL STANDARDS

### A.  Class Actions

Federal Rule of Civil Procedure 23 governs representative litigation on behalf of absent parties.  First, the party seeking certification must demonstrate four prerequisites: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.  Fed. R. Civ. P. 23(a).  The burden of proof for each element is a preponderance of the evidence.  *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010).

Second, the movant must demonstrate that their class fits within one of the recognized "types of class actions," that is: (1) prosecuting separate actions would create a risk of (A) inconsistent results or (B) results that would hamper non-parties' interests; (2) the party opposing the class has acted on common grounds; and/or (3) common questions of law or fact predominate and a class action is the best way to resolve them.  Fed. R. Civ. P. 23(b).

### B.  Collective Actions

The Fair Labor Standards Act permits workers to create a "collective action" by opting-in to wage-and-hour claims brought by similarly situated employees.  29 U.S.C. § 216(b).  "The unique FLSA collective differs from a Rule

23 class because plaintiffs become members of the collective only after they affirmatively consent to join it." *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 540 (2d Cir. 2016) (citation omitted). "In contrast to a class action, an FLSA collective action remains a mosaic of individual claims even after conditional certification." *Provencher v. Bimbo Foods Bakeries Distrib., LLC*, 175 F.4th 180, 188 (2d Cir. 2026).

## IV.    DISCUSSION

The FLSA "imposes minimum-wage and maximum-hour requirements on certain U.S. employers." *Perry v. City of N.Y.*, 78 F.4th 502, 512 (2d Cir. 2023).[2] For instance, the Act mandates that employees get paid a higher, overtime rate for working more than 40 hours in a single workweek. 29 U.S.C. § 207(a)(1). However, the FLSA does not define what counts as "work" or a "workweek." *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 225 (2014). Instead, the FLSA defines the term "employment."

Under the FLSA, "employment" is "work" that is "suffered or permitted." 29 U.S.C. § 203(g) (cleaned up). As the Second Circuit has explained, "[i]f the employer suffers or permits the work—either by requiring it, knowing about it, or failing to exercise reasonable diligence to discover it—then it must

---

[2] Generally speaking, the same basic standards apply to FLSA and NYLL claims. *See, e.g.*, *Lundy v. Cath. Health Sys. of Long Island, Inc.*, 711 F.3d 106, 118 (2d Cir. 2013); *Diaz v. Rene French Cleaners, Inc.*, 2022 WL 4646866, at *4 (E.D.N.Y. Aug. 29, 2022) (Report & Recommendation) (recognizing that FLSA and NYLL standards are "closely aligned"), *adopted by* 2022 WL 4662247 (E.D.N.Y. Sept. 30, 2022).

compensate the employee, even if the employee failed to report the work and even if the employer did not know that the employee was working unpaid." *Perry*, 78 F.4th at 509.

"Because FLSA and [state law] claims usually revolve around the same set of facts, plaintiffs frequently bring both types of claims together in a single action using the procedural mechanisms available under 29 U.S.C. § 216(b) to pursue the FLSA claims as a collective action and under Rule 23 to pursue the [state law] claims as a class action under the district court's supplemental jurisdiction." *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 510 (2d Cir. 2020) (quoting *Shariar v. Smith & Wollensky Rest. Grp. Inc.*, 659 F.3d 234, 244 (2d Cir. 2011)).

Plaintiffs have done just that. Because Rule 23's class certification mechanism imposes a more rigorous set of requirements than the FLSA's collective action tool, *see, e.g.*, *Scott*, 954 F.3d at 520, the Court begins its analysis with plaintiffs' motion to certify a Rule 23 class action based on claims under New York Labor Law ("NYLL").

## A.  NYLL Class Action[3]

Plaintiffs' First Amended Complaint asserts NYLL claims for unpaid wages and overtime (Second and Third Causes of Action) and inaccurate wage

---

[3] In reply, plaintiffs explain that they are not seeking class certification of the NYLL wage notice claim alleged in the First Amended Complaint (Fourth Cause of Action). Dkt. No. 77 at 19 n.6.

statements (Fifth Cause of Action).  Plaintiffs seek to certify the following

NYLL class under Rule 23:

> All current and former employees of United Auto Supply who worked as drivers and/or warehouse workers including Delivery Drivers, CDL Drivers, Warehouse Associates, Warehouse Managers, and Warehouse Supervisors in New York State from **March 8, 2018** through the date of final judgment (the "Class" or "Putative Class").  Corporate officers, shareholders, directors and administrative employees shall not be part of the proposed class.  Individuals who worked in Defendants' Syracuse, Tonawanda, and Rotterdam Distribution Centers (the "Distribution Centers") shall not be part of the proposed class for any work weeks in which they worked exclusively at the Distribution Centers.

Dkt. No. 51-40 at 10 (emphasis added).

Class certification is the exception, not the rule, so the party moving for

class certification "must affirmatively demonstrate" compliance with Rule 23.

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  A plaintiff's burden

under Rule 23 is satisfied if he can prove that a class action is appropriate by

a preponderance of the evidence.  *See, e.g.*, *Teamsters Local 445 Freight Div.*

*Pension, Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008).

First, a plaintiff's proof must survive a "rigorous analysis" of whether

Rule 23(a)'s requirements have been satisfied.  *Roach v. T.L. Cannon Corp.*,

778 F.3d 401, 405 (2d Cir. 2015) (citing *Comcast Corp. v. Behrend*, 569 U.S. 27,

33 (2013)).  As noted *supra*, there are four requirements: "(1) numerosity; (2)

commonality; (3) typicality; and (4) adequacy of representation." *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 538 (2d Cir. 2016).

Second, even if the four requirements of Rule 23(a) are satisfied, the plaintiff must prove that one of the three subcategories of permissible class actions under Rule 23(b) fit the particular case. Fed. R. Civ. P. 23(b). "Such an analysis will frequently entail overlap with the merits of the plaintiff's underlying claim . . . because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33–34 (cleaned up).

### 1. Rule 23(a) - Numerosity

The first element of Rule 23(a) requires plaintiffs to demonstrate that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). As the Second Circuit has explained:

> the numerosity inquiry is not strictly mathematical but must take into account the context of the particular case, in particular whether a class is superior to joinder based on other relevant factors including: (i) judicial economy, (ii) geographic dispersion, (iii) the financial resources of class members, (iv) their ability to sue separately, and (v) requests for injunctive relief that would involve future class members.

*Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co., Inc.*, 772 F.3d 111, 120 (2d Cir. 2014) (citing *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993)).

9

"The numerosity requirement in Rule 23(a)(1) does not mandate that joinder of all parties be impossible—only that the difficulty or inconvenience of joining all members of the class make use of the class action appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 244–45 (2d Cir. 2007).

Plaintiffs have carried their burden on this element. Numerosity is typically presumed if the class would include more than forty members. *See, e.g.*, *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). As plaintiffs point out in their moving brief, defendants' discovery responses established that they employed at least 107 hourly, non-exempt drivers, warehouse workers, warehouse supervisors, and warehouse managers at United's Auburn and Farrell Road locations during the relevant time period. Dkt. No. 51-40 at 20 (summarizing proof).

In addition, the named plaintiffs have testified that there were at least forty other similarly situated individuals at these locations during this time period. Dkt. No. 51-40 at 20. Indeed, at least for purposes of this motion practice, defendants have quite reasonably conceded that this numerosity requirement has been satisfied. Dkt. No. 63 at 21. Accordingly, plaintiffs have satisfied this element by a preponderance of the evidence.

10

## 2. Rule 23(a) - Commonality

The second element of Rule 23(a) requires plaintiffs to demonstrate that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "The Rule does not require all questions of law or fact to be common." *Sykes v. Mel Harris & Assocs., LLC*, 285 F.R.D. 279, 286 (S.D.N.Y. 2012). "Indeed, even a single common question will suffice." *Id.* (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 358–59 (2011)).

"The common question must lend itself to 'classwide resolution' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Sykes*, 285 F.R.D. at 286 (quoting *Wal-Mart Stores, Inc.*, 564 U.S. at 350). In other words, what matters is "the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (emphasis in original).

Plaintiffs have carried their burden on this element. Plaintiffs' First Amended Complaint alleges that defendants engaged in a common, unlawful policy or practice of failing to pay named plaintiffs and those similarly situated to them for all hours worked, including for overtime, by deducting or causing to be deducted at least thirty minutes from plaintiffs' wages for each shift over six hours despite the fact that plaintiffs regularly worked through some or all of these breaks. Plaintiffs further allege that defendants did nothing to record or ensure that plaintiffs received their full meal breaks, and that defendants

11

failed to provide accurate wage statements (*i.e.*, statements reflecting all of the hours plaintiffs worked).

Defendants argue that commonality is lacking because named plaintiffs only worked at a subset of United's locations, are only familiar with the particular practices at those locations, and lack knowledge of any meal-break practices at any of the other locations. Dkt. No. 63 at 21. Defendants further argue that timekeeping data shows "statistically significant variations in the manner in which meal breaks" were recorded at different United locations. *Id*. at 22. In defendants' view, the variability in this large dataset strongly suggests that there is no common unlawful policy or practice at play. *Id*. at 22–26.

Upon review, these arguments are rejected. For purposes of class certification, the Court finds that plaintiffs have supported their allegations of commonality with a sufficiently strong showing of supporting proof: declarations by named plaintiffs and excerpts from defendants' policy documents and time and pay records. Dkt. No. 51-40 at 20–24 (cataloguing evidence).

Throughout their opposition memorandum, defendants make a number of related arguments on these points that are either premature (such as the statistical argument, which might go to the actual merits of whether or not a common unlawful policy existed and might perhaps justify class decertification in the future) or that are based on an assumed favorable premise (that just

because a meal-break-deduction policy is not *per se* unlawful the policy is therefore not a violation on this fact pattern).  *See, e.g.*, Dkt. No. 63 at 13–18, 21–24.

First off, "claims by workers that their employers have unlawfully denied them wages to which they were legally entitled have repeatedly been held to meet the commonality prerequisite for class certification." *Espinoza v. 953 Assocs., LLC*, 280 F.R.D. 113, 127 (S.D.N.Y. 2011).  Indeed, these kind of cases "are about the most perfect questions for class treatment." *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 373 (S.D.N.Y. 2007) (finding predominance requirement satisfied).

Second, regardless of whether or not a so-called "auto-deduct" policy permits an employer to "legally shift the burden to their employees to cancel the automatic deduction," Dkt. No. 63 at 14, that would "not necessarily mean that defendants' allegedly common policy or practice could not—or did not—lead to class-wide wage-and-hour violations." *Aderohumnu v. Loretto Health & Rehab. Ctr.*, 2026 WL 2253830, at *5 (N.D.N.Y. Aug. 5, 2026).

In sum, plaintiffs have submitted evidence sufficient to establish for purposes of class certification that defendants knew, or had reason to know, that plaintiffs regularly worked through meal breaks without compensation.  *See, e.g.*, *Meyers v. Crouse Health Sys., Inc.*, 274 F.R.D. 404, 418 (N.D.N.Y. 2011) (explaining that "[t]he legal question common to the entire class is whether defendants' automatic meal break deduction policy is in compliance with the

13

law"). Accordingly, plaintiffs have satisfied this element by a preponderance of the evidence.

### 3. Rule 23(a) - Typicality

The third element of Rule 23(a) requires plaintiffs to demonstrate that "the claims or defense of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Rule 23(a)(3) is satisfied when each class member's claim arises from the same course of events, and each class member makes similar arguments to prove the defendant's liability." *Stinson v. City of N.Y.*, 282 F.R.D. 360, 370 (S.D.N.Y. 2012) (cleaned up).

Upon review, plaintiffs have carried their burden on this element for substantially the same reasons set forth *supra* with regard to the commonality question. *Sykes*, 285 F.R.D. at 287 ("The commonality and typicality requirements of Rule 23(a) tend to merge such that similar considerations inform the analysis for both prerequisites.").

Despite this overlap or merger in the analysis, defendants argue that typicality has not been satisfied because the named plaintiffs' "work setting, role, supervisory structure, and knowledge base are limited and materially distinct from the remainder of the proposed class." Dkt. No. 63 at 26–28. According to defendants, "[t]here is simply not a stitch of evidence in the record on this motion that supports a finding that Ferrara or Johnson are typical of any employee working outside of the [United] Auburn retail store, or that Trinca is

14

typical of anyone other than the small group of employees who work at Farrell Road." *Id.* at 28.

This argument is rejected. Typicality "does not require factual identity between the named plaintiffs and the class members, only that the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *Gonzalez v. Hanover Ventures Marketplace, LLC*, 2024 WL 1157074, at \*5 (S.D.N.Y. Mar. 18, 2024) (cleaned up) (explaining typicality is "not demanding" and does not "require that damages be identical among class members").

Plaintiffs have made this showing in their papers. As plaintiffs explain, named plaintiffs "testified they routinely worked through their meal breaks or were interrupted during them." Dkt. No. 77-8 at 18. They have offered proof that they "witnessed coworkers, both from their location and others, not receiving meal breaks." *Id.* They have testified that they complained about this to managers, who stated "that was how the company was run." *Id.* at 19. Further, defendants' President "specifically testified that there *were no* procedures to track when an individual worked through a lunch break, since he claim that workers would *never* work through a lunch break." *Id.*

In short, the Court agrees with plaintiffs—they do not need to have seen their coworkers' paystubs or timecards to get over the hump on this element of a class certification motion. In sum, and for the reasons set forth in plaintiffs'

15

opening and reply memoranda, plaintiffs have satisfied this element by a pre-ponderance of the evidence.

### 4. Rule 23(a) - Adequacy of Representation

The fourth element of Rule 23(a) requires plaintiffs to demonstrate that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[T]he adequacy requirement is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of the other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). "In addition, class counsel must be qualified, experienced and able to conduct the litigation." *V.W. ex rel. Williams v. Conway*, 236 F. Supp. 3d 554, 576 (N.D.N.Y. 2017) (cleaned up).

This inquiry "serves to uncover conflicts of interest between the parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "Not every conflict, however, precludes a finding of ade-quacy." *Sykes*, 285 F.R.D. at 287. "The conflict that will prevent a plaintiff from meeting the Rule 23(a)(4) prerequisite must be fundamental, and specu-lative conflict should be disregarded at the class certification stage." *Id*. (cita-tion omitted).

Plaintiffs have carried their burden on this element. There is no indica-tion at this point that named plaintiffs' interests have diverged from that of

the proposed class, all of whom have allegedly been harmed in substantially the same manner by the same alleged policy or practice. And of course, proposed class counsel has substantial litigation experience in this area of law.

In response, defendants argue that named plaintiffs cannot satisfy this requirement because they do not "know the contours of the case." Dkt. No. 63 at 29. In defendants' view, named plaintiffs "rely solely on their own experiences, which they vaguely allege were similar to the experiences of their largely unidentified coworkers." *Id.* at 29–31 (summarizing named plaintiffs' alleged shortcomings).

These arguments are rejected. First off, the Court does not buy defendants' argument that named plaintiffs—non-lawyers, mind you—have to demonstrate some particular quantum of legal understanding about what, exactly, allegedly violates the relevant labor law. *See Carollo v. United Capital Corp.*, 528 F. Supp. 3d 37, 55–56 (N.D.N.Y. 2021). Second, courts are generally loathe to disqualify proposed class representatives based on inaccurate or conflicting testimony, even if in defendants' view it "undermines" the theory of class-wide relief. *See id.* at 56. Defendants' showing is not enough to justify disqualification of the named plaintiffs. Accordingly, plaintiffs have satisfied this element by a preponderance of the evidence.

### 5. Rule 23(b) - Type of Class Action

Plaintiffs have also satisfied this requirement. They rely on Rule 23(b)(3), which requires them to show (a) that "the question of law or fact common to class members predominate over any questions affecting only individuals members"; and (b) that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### a. Predominance

"As a general matter, the Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *In re Nassau County Strip Search Cases*, 461 F.3d 219, 225 (2d Cir. 2006) (cleaned up). In short, the Rule "encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Id.*

Measured against this standard, plaintiffs have carried their burden on this element. Although this inquiry is "more demanding" than the commonality requirement, *Comcast Corp.*, 569 U.S. at 34, predominance is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only

18

to individualized proof." *Glatt*, 811 F.3d at 538 (cleaned up).  That standard is met here.  The individualized questions identified by defendants as justification to conclude otherwise largely go to damages, which are ordinarily not a basis on which to defeat certification.  *See, e.g.*, *Roach*, 778 F.3d at 407–08.

### b. Superiority

In assessing this "superiority" question, Rule 23(b)(3) instructs courts to consider: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3)(A)–(D).

Upon review, these factors favor certification.  Defendants insist that liability turns on "thousands of individualized liability inquiries," as evidenced in part by named plaintiffs' deposition testimony.  Dkt. No. 63 at 31–35.  But courts routinely find that "a class action is superior where, as here potential class members are aggrieved by the same policy, the damages suffered are small in relation to the expense and burden of individual litigation, and many potential class members are currently employed by defendants."  *Schear v. Food Scope Am., Inc.*, 297 F.R.D. 114, 126 (S.D.N.Y. 2014) (collecting cases).

### 6. Rule 23 & Ascertainability

Finally, courts have written a third, "implied requirement" into Rule 23: a party seeking class certification must demonstrate that the proposed class is "ascertainable." *Sykes*, 285 F.R.D. at 287. Under this additional element, "[a]n identifiable class exists of its members can be ascertained by reference to objective criteria." *Stinson*, 282 F.R.D. at 367.

Plaintiffs have also satisfied this requirement. Dkt. No. 51-40 at 29. The members of the class are readily identifiable pursuant to objective criteria, including but not limited to the records maintained by defendants. In sum, plaintiffs have affirmatively demonstrated their compliance with the requirements for class certification. Accordingly, plaintiff's motion for Rule 23 class certification will be granted.

### B. FLSA Collective Action

Plaintiffs' First Amended Complaint asserts an FLSA claim for unpaid wages and overtime (First Cause of Action). Plaintiffs also seek to certify a collective under the FLSA. Dkt. No. 51-40 at 31–35.

Under § 216(b), district courts "have discretion, in appropriate cases," to provide notice of a pending FLSA claim to potential plaintiffs so that they may "opt in" to that claim. *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010). The Second Circuit has endorsed a two-step process for certifying an FLSA collective action. *Id.*

20

"At step one, the district court permits a notice to be sent to potential opt-in plaintiffs if the named plaintiffs make a modest factual showing that they and others together were victims of a common policy or plan that violated the law." *Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 515 (2d Cir. 2020) (cleaned up). The inquiry at this first step uses a "low standard of proof" and only requires a "modest factual showing" that the named plaintiffs and the potential opt-ins "were victims of a common policy or plan that violated the law." *Myers*, 624 F.3d at 555.

"At step two, with the benefit of additional factual development, the district court determines whether the collective action may go forward by determining whether the opt-in plaintiffs are in fact similarly situated to the named plaintiffs." *Scott*, 954 F.3d at 515 (cleaned up). If the record shows that the opt-ins are not similarly situated, the case may be "de-certified," and the opt-in's claims dismissed without prejudice. *Myers*, 624 F.3d at 555.

The Second Circuit has cautioned that FLSA certification "not only imposes a lower bar than Rule 23, it imposes a bar lower in some sense even than Rules 20 and 42, which set forth the relatively loose requirements for permissive joinder and consolidation at trial." *Scott*, 954 F.3d at 520. Accordingly, courts must take care not to equate the requirements of § 216(b) with those of Rule 23. *Id.*

21

Upon review of the briefing, and for substantially the reasons discussed at length *supra*, plaintiffs' motion for conditional certification under the FLSA will be granted. Plaintiffs' evidentiary showing more than meets the "modest" evidentiary burden required at this stage of the case. *See* Dkt. No. 51-40 at 31–35; *see also* Dkt. No. 77-8 at 7 –13 (summarizing proof).

In reaching this conclusion, the Court rejects defendants' argument that a "modest plus" burden should apply where, as here, some fact discovery has taken place. *See* Dkt. No. 63 at 11–13. As plaintiffs point out, the Second Circuit has not endorsed this standard. *See Louis v. Ajay Glass & Mirror Co.*, 2026 WL 482589, at *3 (N.D.N.Y. Feb. 20, 2026) (explaining same). But even assuming otherwise, plaintiffs' showing is more than enough to satisfy the more demanding "modest plus" standard, too.

Plaintiffs' request for equitable tolling will also be granted. "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Mottahedeh v. United States*, 794 F.3d 347, 352 (2d Cir. 2015) (citation omitted).

However, courts routinely grant equitable tolling in the context of a collective action under the FLSA. *See, e.g., Cooke v. Frank Brunckhorst Co., LLC*, 722 F. Supp. 3d 127, 146–47 (E.D.N.Y. 2024) (acknowledging "ongoing trend in which courts have tolled the FLSA statute of limitations for potential opt-in

plaintiffs"). The reason is simple: the FLSA is an *opt-in* regime, and the statute of limitations for opt-in plaintiffs runs until they join the case (it does not relate back to the filing of the named plaintiff's pleading, which means some opt-in plaintiffs who learn about the litigation too late will be barred by the limitations period). *See id.*

In sum, after considering the parties' briefing, the Court agrees with plaintiffs that tolling is appropriate. Accordingly, the Court will equitably toll the FLSA statute of limitations by extending the tolling through the date of this opinion. *See* Dkt. No. 51-40 at 33–34 (explaining that parties stipulated to tolling "from the date the complaint was filed until the filing of this motion" and requesting that tolling be "extended during this motion's pendency").

## IV.  CONCLUSION

Therefore, it is

ORDERED that

1. Plaintiffs' motion for class and collective certification (Dkt. No. 51) is GRANTED:

2. Plaintiffs' proposed notice forms are AUTHORIZED to be published (Plaintiffs' Exhibits JJ and KK); and

3. Defendants shall PRODUCE a full and complete class list of all class members in accordance with the proposed publication order (Plaintiffs' Exhibit LL).

23

The Clerk of the Court is directed to terminate the pending motion.

IT IS SO ORDERED.


Dated:  August 13, 2026
        Utica, New York.

David N. Hurd
U.S. District Judge